Good morning, Your Honors. Bruce Hyman for Plaintiff Appellant, Lilia Young. This is a case of summary judgment was granted on discrimination and retaliation claims. At the heart of whether the summary judgment should be granted is, is there a triable issue of fact of pretext? The employer asserts that Ms. was told not to make on her ledger, which indicated her rent was still free. The court must conclude for summary judgment purposes that that entry was not made by her because she says she didn't do it. Now at trial, the jury can evaluate her credibility, but for summary judgment, the court must believe her. The case that says that is Leslie versus Grupo, and in that case, they said even if the court finds it implausible, the court must believe the testimony. So then the issue is, who made the entry? The defendant says, well, Mr. Jones, who decided to fire Ms. Young, believed she made the entry. But if he is the one who made this entry, he didn't believe it was her. In fact, if he made it, it would be impossible for him to reasonably believe it was her. And what is the evidence that he made it? Well, first, she didn't make it, so someone else had to do it. Two, he had a motive to do it. He wrote an e-mail when he decided he wanted to fire her to Darla Flanagan, the owner of the company, saying I'd like to fire her, she's going to sue us for discrimination. But Barrett's labor attorney, who actually turned out to be a human resources manager, but he apparently thought it was a labor attorney, says that based on this entry, the termination is justified. So there you have his motive. He sees that this is a pretext. If he can make it look like it's her, then he can fire her and avoid discrimination liability. That's in his mind. The record's pretty clear on the following, isn't it? That prior to a date certain, your client's compensation package included free rent. Correct. Then there were discussions between your client and the responsible person with Trinity in which there were discussions about changing the nature of the compensation package, correct? Basically correct. There was discussion about a pay increase, and at the end of July, she got her pay increase. The e-mail, which Mr. Jones wrote, which is at 109 in the excerpts of record, mentions the terms of the pay increase, and it says absolutely nothing about that she'll now have to pay rent. And my question is, weren't there, that leads right to my point, weren't there subsequent e-mails in which he purportedly reminded her that because there had been an increase in compensation that she no longer was to receive free rent? That was on September 7th, yes. He told her on September 7th that she would have to pay rent. That's uncontradicted. Correct. Did she ever respond to those e-mails? She responded verbally, but it doesn't matter for purposes of the case whether she responded or not. The issue is, did she, is the reason articulated. And her denial, is that sufficient when the evidence largely points the other way? It's just a bald face, I didn't do it. Is that enough? It is enough. And the evidence doesn't just point the other way, Your Honor. The evidence is that although it purports to say that user 55 made the entry, anybody who knew her password could have made the entry. So that doesn't mean that she made the entry. And when you look at Mr. Jones' e-mail, he sees this as a way to avoid discrimination liability. And then we have Mr. Miles, who knew Ms. Young's password. Mr. Miles is their Director of Information Technology, and he says to, he says when I ask him, well, did you give Mr. Jones the password, he doesn't just say no. He says, I don't believe, I'm not positive, I don't think, I don't know, I don't know. So, you know, based on the whole pattern of evidence, a jury could reasonably conclude that Mr. Jones made the entry. Your client does admit that she made prior entries. Yes. And that was perfectly proper to make the prior entries. What about the September entry? Now, Jones sends her an e-mail not only early in September, but it was September 26th. How did she respond to that? I believe she responded verbally, but again ---- She says, please make arrangements to pay rent. Did she pay the rent? No, she didn't, Your Honor. Wasn't that enough? She's not paying her rent for September. No. And the issue here is not whether or not that rent increase was illegal, but the issue is what Mr. Jones thought. And we pointed out in our ---- She's told to pay the rent for September. She does not pay it. Isn't that sufficient to fire her? Well, that isn't the reason that they assert for firing her. The reason they assert for firing her is that she made the ledger entry. And, in fact, the rent increase was illegal, or one could reasonably conclude it was illegal, because California law, and we discussed this in our reply brief, California law is very clear that a tenant has to be given 60 days' written notice of a rent increase. And Ms. Young had a landlord-tenant agreement saying she was a month-to-month tenant, and she did not get 60 days' written notice of a rent increase. On September 7th, if he had served her, per the statute, which we cited in our brief, which is Civil Code 827, he has to give her 60 days' written notice, and he has to serve it on her personally or by mail. And if he did that on September 7th, then legally she could have been ordered to pay rent starting November 7th. She's in a somewhat peculiar position. I mean, you say she's a tenant, but she's also an employee. Well. It's part of her compensation package. Right. And the Court doesn't have to decide this issue. And perhaps I should tell the Court right now that we did file, and if you want supplemental briefing on it, we can do it, but we did file a case in State court because, remember, Judge Armstrong dismissed the State claims involving the illegal rent increase without prejudice. And we had a summary judgment motion in State court on this very issue of whether this rent increase was illegal or not and whether her termination was arguably or there was a triable issue of fact that it was illegal based on the illegal rent increase. And the judge, after looking at all the briefing, denied summary judgment on that point. So I think there's a very strong argument here that it was an illegal rent increase. And certainly the Court, as a matter of law, particularly in light of what the State court has said on this issue of State law, should not hold that this rent increase was legal as a matter of law. I mean, the fact that she's an employee doesn't matter. Civil Code 827 is plain language. It says if you're a tenant and you don't get a 60-day written, you have to get 60 days written notice to have a rent increase over 10 percent. It doesn't say, well, there's an exemption here for employees. The legislature could have made an exemption for employees, but it didn't do that. We had this issue, and the State court ruled on it. And the language of the statute is plain. It doesn't create an exemption for employees. She has a landlord-tenant agreement which says she's a month-to-month tenant. Jones even says in his summary judgment declaration she's a tenant. So this was an illegal rent increase, and at least Jones, it's very plausible that he was concerned about that fact, and so he needed a new pretext. Now, I don't think even if she made the ledger entry that it would justify termination under State law, because, I mean, she didn't have that ledger entry. Her rent still was free, and she had a right to still make the entry saying it was free, but Jones apparently thought he could fire her based on the illegal rent increase because his e-mail says Barrett's labor lawyer, who really turned out to be a human resources director, says that that's okay, that that justifies the termination. And I'm concerned she'll sue for discrimination, but we'll be okay based on this. I think you're at a point in your argument where you've now repeated a few arguments, which is fine. You can use the time any way you wish. But would you like to reserve some time for rebuttal? I would. It's at the 10-minute mark now, and I'd like to reserve 3 to 5 minutes for rebuttal. You go right ahead. Now, then there are certain other arguments that have been made, although I think the rent issue is the heart of it. There's the technical argument. They say, well, Mr. Jones didn't know she was pregnant when she was terminated. But there's a jury could reasonably conclude that he did know that. My client says she told Mr. Bellier, her immediate supervisor, that she was pregnant, and that Mr. Bellier then said, I've got to talk to Rick Jones about this. Then later in the day, Rick Jones sends her emails anxious to resolve her bonuses, which suggests that he's decided to terminate her and he wants to be able to pay her final pay when she's terminated, as is required by California law. So there is a triable issue of fact, and a jury could reasonably conclude that Mr. Jones knew she was pregnant. We cited the Day v. Colt case, which I think is very opposite on this issue, that the mere fact that Jones and Bellier deny that she said she was pregnant and deny that Bellier told Jones does not mean, in fact, that Bellier didn't tell Jones, in light of my client's testimony, that she told Bellier and that Bellier said he'd tell Jones, and then Jones sends her the emails and then she's fired three days later. On the other issues, the Fair Housing Act, there are certain technical arguments that the defendants make that are not relevant or that are without merit. They argue that the plan, discriminatory plan, never went into effect. It doesn't matter. I mean, people should be encouraged to protest discriminatory and illegal plans before they go into effect. And Smith v. Steckle, which is a Ninth Circuit decision, says that 42 U.S.C. 336.17, quote, deals with a situation where no discriminatory housing practice may have occurred at all because the would-be tenant has been discouraged from asserting his rights or because the rights have actually been respected by persons who suffer consequent retaliation. So that case clearly says the plan doesn't have to go into effect. We also cited the decision we found on Westlaw, Cass v. American Properties, on this point. They also state that this is discrimination against non-English-speaking people and that that's different from discrimination against ethnic groups. But we cited Garcia v. Spun Steak, which is another Ninth Circuit decision, and Garcia v. Spun Steak makes it clear that if, in fact, the non-English-speaking people are very largely Hispanic, then that is a case of discrimination against people because they're Hispanic. And we presented the evidence that virtually all the non-English-speaking tenants here are Hispanic. Then the district court suggested, well, it's not necessarily discriminatory to have a marketing plan to attract more English-speaking tenants. That doesn't necessarily mean you don't want to rent to non-English-speaking tenants. Well, the answer to that is that one can infer from my client's declaration that, in fact, she did not, that Mr. Jones preferred to rent to English-speaking tenants, give them preference. She says, Mr. Jones told me that when we needed to create a new marketing plan by a certain date to attract only English-speaking tenants to the Napa properties so that we would not have to translate documents or deal with the city people or the media. Furthermore, this court in Monterey Mechanical v. Wilson said that advertising to target a specific group is, in fact, unlawful discrimination. In that case, the advertising was to target minorities and women, and the court said that that was unlawful discrimination. And here, advertising to target English-speaking people would also be unlawful discrimination. Furthermore, it doesn't have to be illegal. All she needs is a reasonable belief that she's opposing unlawful discrimination. They also state that under 42 U.S.C. 1981, discrimination against Spanish-speaking persons is not protected, but we cited cases saying that it is, that it's so closely intertwined with discrimination against people of Hispanic ethnicity or ancestry, and those cases are in our brief. Then if the court does reverse the summary judgment, it should also reverse the cost award. We did not file a separate notice of appeal as to the cost award, but the only grounds for reversing the cost award that we're asserting is that the summary judgment should be reversed. And in that situation, it is not economic to force parties to file a separate notice of appeal. Cost awards often aren't very large, and there's no practical reason to force parties to file a separate notice of appeal. And then it would just force more paperwork on the courts, additionally. The defendant says that if the summary judgment's reversed, you should at least, the court should at least grant summary judgment as to Fowler Flanagan on grounds it's not an employer. We disagree. We had an arrangement that we were not going to, we were going to submit a supplemental brief on Fowler Flanagan by June 7th of 2004, and the court granted summary judgment and vacated all deadlines on May 27th. So we haven't had a chance to present our evidence and arguments on Fowler Flanagan to the trial court. If the case is remanded, then we'll do that. Thank you. I reserve the rest of my time for rebuttal. Mr. Begley. Good morning, Judge Hawkins, Judge Noonan, Judge Reed. I'm Brendan Begley from the Porter Scott Firm in Sacramento on behalf of the appellees. Before I get started, I'd just like to take a moment to wish the panel a happy St. Patrick's Day. I suppose San Francisco, New York, and Dublin are the three best places to be today. I'd like to take care of a housekeeping matter, too, before I turn to what I really want to focus my argument on is the lack of pretext or evidence of pretext in this case. Opposing counsel, I would say, rightly took me to task in his reply brief for failing to cite portions of the record that show that Lilia Young wrote an email some four or five days before her termination indicating that she already believes that there were legitimate reasons to terminate her. And if the Court is interested in those portions of the record that show that, that I unfortunately neglected to cite in my opposition brief, that can be found in my supplemental excerpt of record at 425, which is an email message in Spanish the plaintiff authored, and then in my supplemental excerpts of record at 348 through 51, which is her deposition testimony about that explains very clearly what that email message meant and what she was saying in there. Now, seeing as how opposing counsel lied. What about the state law that she had to receive notice before the rent could be changed? I beg your pardon, Judge Reed? What about the state statute that requires notice before a rent increase that counsel referred to in the opening argument? Well, Your Honor, that's a complicated issue of state law. I think Judge Armstrong probably remanded those state law claims to state court to let state courts decide that. From our perspective. But that isn't really the answer, isn't the question whether there's pretext or not in failing to, the fact she didn't pay the rent? I don't think that you have to resolve a matter of state law to decide whether or not there was pretext, Your Honor. Judge Reed, you asked is it enough to say, for Lily Young to say, I did not make the entry on the ledger. And plaintiff's counsel said, yes, that is enough. I'm here to respectfully tell you that is not enough. That does create a triable issue of fact as to whether or not she made the entry. But we cited a case in our brief, the Aloha Island Air case, which says very clearly, it doesn't matter if the employer is right or wrong when it believes that the employee is engaged in misconduct, as long as it has a valid or legitimate reason to reach that belief. And in this case, we do. I mean, she didn't pay her rent for August. At that point, Rick Jones gave Lily Young the benefit of the doubt and said, all right, maybe we misunderstood each other. Here now is the beginning of September. I want you to start paying rent for September and October. I'm going to reverse the entry on September. You've got to pay rent for that and from here on out.  And in the middle of October, Rick Jones discovers that somebody else, I shouldn't say somebody else, that somebody has made this entry. From what happened, Rick Jones contacts the Ken Miles, the IT person, says, how does this happen? The proposition that the denial is sufficient. The denial creates a triable issue of fact as to whether or not she made the entry. It does not create a triable issue of fact as to whether or not Mr. Jones actually and legitimately and validly believed that she did. And that is the basis for the termination. Which reminds me, with regard to the pregnancy discrimination claim, as I was looking at the evidence this morning, the record struck me as indicating there's another ground to affirm the summary judgment. The undisputed evidence in the record shows that whoever made this entry did it on October 14th. Young did not tell anyone that she was pregnant until October 15th. And so, therefore, whoever made this entry on October 14th could not, or supposedly if it was Jones or Belyea, they did not have any knowledge that Young was pregnant before that point. So in the pregnancy discrimination claim, if the thing happened on the 14th, the entry in question, and then the decision to terminate her is made on the 15th, and that's when she announces that she's pregnant, clearly the event that led to her termination occurred before anyone knew she was pregnant. So they didn't have knowledge of that. They couldn't have discriminated against her on that basis. Mr. Hyman, I think, was suggesting that in answer to a question that did Young respond to Rick Jones' demands that she start paying rent in September, and he said she responded verbally. My recollection of the record is that there's nothing in there that suggests that she ever opposed the rent increase, and there's actually evidence, I'd have to look for it to find it, that suggests expressly she never did say, I'm not going to pay rent, that's an illegal rent increase, that's unlawful under California Civil Code 807 or whatever it is. She never said that. And so that's just one more reason for Rick Jones to legitimately believe on October 15th that she made this unlawful entry. He tells her a few times, all right, you have to start paying rent now. Let's get on the program here. And he finds this entry that indicates that she did pay rent when, in fact, she didn't. She never told him, hey, I don't have to pay rent. I'm opposing this. He has no idea in the world that she's opposing it. And so, you know, he just legitimately believes that this is her changing the thing. To use what opposing counsel tries to make as a tribal issue of fact as to whether or not Mr. Jones did this would be nothing more than rank speculation. Judge Hawkins, you sat on a panel in a case called Witherow, where an inmate was challenging his First Amendment rights because he said that the prison was inspecting mail and that, you know, he's got a free First Amendment right to have his mail sent out and the prison shouldn't be inspecting what he writes. Well, the reason for the inspection was to make sure that he wasn't sending in contraband or inappropriate materials through the mail to harass public officials or whatnot. And he said, well, you know, it's a First Amendment violation for them to read my mail, to read the content in my mail, and that would probably be so, but he didn't have any information to show that the prison officials had done that. He just wanted the court to speculate that, you know, when they're looking at the mail to see if it's addressed correctly and that it doesn't have something in there that seems like contraband or inappropriate materials, they have the opportunity to read it and so, therefore, we can speculate that they did. And clearly, a prisoner and his warden are natural adversaries. If anyone would have a motive to perhaps do something like that, maybe the warden would. But even in that case, the court expressly said, we're not going to engage in rank speculation to create a tribal issue of fact. To say that Lance Belyea disputed Lillia Young's contention that she told him that she was pregnant creates a tribal issue of fact, but it's not a material issue of fact because Lance Belyea is not the one who made the decision to terminate Lillia Young, and there's no information or evidence in the record to suggest that Lance Belyea had any influence on that decision. Opposing counsel invites the court to import the analysis in Dey from the Sixth Circuit, and I would encourage this panel to resist that. The Ninth Circuit's case law is very clear that credibility determinations in the context of summary judgment are inappropriate. The Dey court did that. If the court were to be persuaded by Dey, it should be confined to a situation where you're making that credibility decision because the tribal issue of fact is developed by the circumstance that the person who's denying something is denying undisputed facts in the record. Facts that both parties agree are uncontested and indisputable. You have somebody doing that, well, then maybe you've got to start getting into credibility weighing. But when you have a party who simply opposes, you know, Lillia Young says, I told Lance Belyea, and Lance Belyea says you didn't, now you have a tribal issue of fact. That's all that is. You shouldn't take that a step further and say, and now we're going to find that Lance Belyea is incredible, and therefore he lied on everything else he said. That's an unfounded step that the court should not take. When I say it's a tribal issue of fact, it's inconsequential because it's an immaterial disputed fact. It's immaterial as to whether or not Lance Belyea knew that she was pregnant because he didn't have input in the decision. Not only that, as I said earlier, the event that led to her termination happened before Lance Belyea found out that she was pregnant. If the panel has any other questions, I'd be happy to answer them. Otherwise, I would submit. Would there be a genuine issue of material fact as to whether Rick Jones reasonably believed that she made the entry? Is there a tribal issue of fact as to whether or not Rick Jones reasonably believed that she made the entry? Yes. Well, I don't see anything in the record to dispute that Rick Jones reasonably believed that she did. I mean, when you add up the evidence, he thought that he told her in July that she was supposed to start making the paying rent. Maybe he did. Maybe he didn't. You have to, I suppose, take Lillia Young's word that he didn't tell her, but he thought he did. Come to September, he sends her the e-mail on September 7, tells her, all right, apparently we were confused. You have to start paying rent now, though. She still doesn't pay rent for September, and then again in October doesn't pay rent. She doesn't tell him she's not going to. She doesn't tell him it's illegal for you to increase my rent. She doesn't contest it or refute it in any way. She just lets Rick Jones think that she understands that she has to start paying rent. But then she doesn't. Then on October 15th, he discovers that somebody made an entry the date before on her account indicating that she paid rent. He calls Ken Miles, their IT person, and says, how does this happen? How can I figure out who did this? He finds out you have this little thing that will show the stamp, the user ID, and that user ID is confirmed to be Lillia Young. He doesn't decide to terminate her right then. He thinks he wants to, but he sends Nicole Ralston to do an investigation with John Shockley. They drive up there on October 18th. They ask Lillia Young. She doesn't say, I paid the rent. You know, she says, oh, I didn't make the entry. But at that point, is that a reasonable basis to – She did say at that point, I didn't make the entry. Yes, but she didn't say, I paid the rent. And so – I think what she said at that point was that's between Young and me. Yeah. In the Aloha Island Air case, I mean, you have an employee saying, I unplugged the thing, or I signaled the pilots, or whatever it was, and then drove away, and you have witnesses saying something else. The employer is entitled to believe the witnesses. The fact that somebody can test whether or not something happened does not create a triable issue of fact as to whether or not Rick Jones legitimately believed that she had done it. Even if she didn't do it, he had a basis to believe that she did. Even if she said she didn't, she still didn't pay rent. And so he could think, well, she's saying she didn't do it, but she doesn't offer any explanation as to how somebody got her password, how somebody got in there and changed this. And furthermore, if it was happening on the 15th, to change it back to the date on the 14th, that's an awful lot to – And the October rent would have been due when? By then. Certainly by then. What date? Well, in September. She made it on September 1st. So the October day rent is due October 1 or – That's my understanding. I'd have to scour the record a little bit to give you a definite answer. It's my understanding it would be the beginning of the month, though. And, in fact, that's what it was in September. She paid and made the entry before September 7th or September 1, I believe. So that's my understanding. Okay. Thank you very much for your argument. We'll hear a rebuttal argument at this time. I hope counsel didn't bring the Zapruder film. I left it at home. Thank you. The part of the issue, again, is is there an issue of pretext? And there plainly is. It has to be believed, as defense counsel conceded, that Ms. Young did not make the entry. That's where we start. So then who made it? They have not suggested that anyone else other than Rick Jones had a motive to make it. And Rick Jones plainly did. He wrote an e-mail to the owner saying he wanted to fire her. He said she's going to sue for discrimination. But this will justify the discharge. And further ---- Did she make any statement that she didn't have to pay the rent? They didn't argue that in their opinion. I'm asking you, did she? She did. And I meant ---- Is it in the record? It is not in the record because it was not argued in the summary judgment papers. Well, the answer is in the record she did not make any statement that she didn't have to pay the rent. Is that right? I think there is no such statement in the record. But it was not raised in the summary judgment that she'd motioned in their papers that she didn't say anything. That was not listed as a reason for granting summary judgment in their papers. If it had been, we would have mentioned it in our opposition. And the Court does not need to find that she made such a statement in order to reverse summary judgment. Rick Jones is an experienced manager in the property management business. He knows California law. Civil Code 827 spelling out when you can increase a tenant's rent is basic California law. And a jury could reasonably conclude that he knew full well that his rent increase was illegal and he felt like he had to have some other reason to justify the discharge. And then he writes the email saying the labor lawyer says this justifies the discharge. And the memo that is in the record by Nicole Raulston, the HR person, relating what Jones told her, does not give the rent increase as a reason for the discharge. It only gives manipulation of the ledger. And I don't have that record site now, but that memo of Nicole Raulston stuck in Lillia Young's personnel file on the official Trinity form is in the record and it only gives manipulation of the ledger as the reason. So a jury could conclude. And furthermore, it would have been easy for Mr. Jones to have made the entry and make it look like Ms. Young made it. Your Honors haven't heard the witnesses. You've read the briefs. The jury will listen to the witnesses. They will listen to Ms. Young. They will listen to Mr. Jones. They will listen to Mr. Miles who said, I don't know, I don't know, when asked whether he gave Mr. Jones the password. And that is what our system is about, a jury listening to the witnesses and deciding who to believe. Your Honors don't, even if you have an opinion based on the briefs right now, you don't know what your opinion would be after you listen to the witnesses and observe their demeanor. This is a case where my client has a right to a jury to listen to the witnesses, decide if she's telling the truth or if Jones is telling the truth. And clearly there is a triable issue of fact of pretext based on all the evidence. You're out of time. Thank you for your argument. Thank both counsel for their argument. The case just argued will be submitted for decision.
judges: Noonan, Hawkins, Reed